FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2016 SEP 21 AM 10:49

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES OF AMERICA

v.

CHARLES M. FRENCH
a/k/a Mick French

CASE NO. 3:16-cr-138-J-34JRK
Ct. 1:      18 U.S.C. § 371
Forfeiture: 18 U.S.C. § 981(a)(1)(C)
            and 28 U.S.C. § 2461(c)

## INFORMATION

The United States Attorney charges:

### COUNT ONE
### (Conspiracy)

**A.   Introduction**

At times material herein, unless otherwise specified:

**The Defendant and Co-Conspirators**

1.   CHARLES M. FRENCH (FRENCH) was a resident of Hicksville, Ohio, and was the Vice-President of The Wholesale House.

2.   Marcelene M. Keesbury (Keesbury) was a resident of Hicksville, Ohio, and was the President of The Wholesale House, Inc. (The Wholesale House) and held powers of attorney for the sole shareholders of The Wholesale House.

3.   Justin G. Pennington (Pennington) was a resident of Ft. Wayne, Indiana and St. Johns County, Florida. During approximately the first half of the conspiracy, Pennington was employed as the Manager of Information Technology (IT) for The Wholesale House. During the course of the conspiracy, Pennington

stopped being an employee of The Wholesale House and became a contractor to The Wholesale House. Pennington was primarily responsible for the day-to-day operations of the business 3 Kings used by the conspirators to carry out their fraudulent scheme.

## BACKGROUND

4. The Wholesale House is a business headquartered in Hicksville, Ohio, which sells consumer electronics nationwide to both "brick and mortar stores" as well as internet based stores. The Wholesale House maintains a warehouse in Jacksonville, Florida, and the owners of The Wholesale House reside in the greater Jacksonville, Florida, area. In the normal course of business, The Wholesale House would offer different pricing discounts to customers of The Wholesale House, based upon factors such as the volume of product purchased by the customer and the length of time the customer had been purchasing products from The Wholesale House.

5. The conspirators operated an internet business identified as 3 Kings Audio, LLC, 3 Kings Group, LLC, and 3 Kings Sales, LLC (collectively referred to as 3 Kings). The conspirators fraudulently concealed their ownership interests in 3 Kings and used the business to purchase products sold by The Wholesale House, which 3 Kings would then re-sell by advertisements on the internet.

## B. The Conspiracy

From approximately the second half of 2010 and continuing thereafter through in or about March, 2014, in Jacksonville and St. Johns County, within the Middle District of Florida, and elsewhere,

**CHARLES M. FRENCH,**
a/k/a Mick French,

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with Marcelene M. Keesbury and Justin G. Pennington to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate commerce, writings, signs, visual pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## C. Manner and Means of the Conspiracy

The manner and means by which FRENCH and co-conspirators sought to accomplish the purpose and objectives of the conspiracy include, but are not limited to, the following:

1. It was a part of the conspiracy that the defendants would, based upon the fact that the defendants were high level employees of The Wholesale House, agree to open a business, referred to as 3 Kings, which they used as a vehicle to purchase products from The Wholesale House.

2.  It was further a part of the conspiracy that the defendants would hide and conceal their interest in 3 Kings and use 3 Kings to purchase products from the owners of The Wholesale House, other employees of The Wholesale House, and customers of The Wholesale House.

3.  It was further a part of the conspiracy that Pennington would assume primary responsibility for the day-to-day operations of 3 Kings.

4.  It was further a part of the conspiracy that FRENCH would ensure that he personally handled and controlled all aspects of sales to 3 Kings from The Wholesale House, to the exclusion of other salespersons at The Wholesale House.

5.  It was further a part of the conspiracy that Keesbury and FRENCH would take actions to grant 3 Kings substantial pricing discounts on products 3 Kings would purchase from The Wholesale House.

6.  It was further a part of the conspiracy that the conspirators would use the substantial pricing discounts they secretly secured from The Wholesale House to enable 3 Kings to undercut retail competitors, including other customers of The Wholesale House.

7.  It was further a part of the conspiracy that Keesbury would fraudulently use the powers-of-attorney she held as President of The Wholesale House, granted to her by the two owners of The Wholesale House, to increase the line-of-credit The Wholesale House held at its financial institution in order to mask

the fact that 3 Kings failed to timely and/or completely pay 3 King's debt to The Wholesale House.

8. It was further a part of the conspiracy that Pennington would, using the benefit of the reduced price Keesbury and FRENCH caused The Wholesale House to sell its products to 3 Kings, sell products using the internet at prices below the prices other customers of The Wholesale House could sell the same products, and therefore, undercut its competitors.

9. It was further a part of the conspiracy that Pennington would periodically make electronic funds transfers of proceeds of the scheme to each of the defendants, totaling more than $1 million to each defendant, from financial institutions, including one located in Jacksonville, Florida.

10. It was further a part of the conspiracy that Keesbury and FRENCH would cause The Wholesale House to use its assets to ship products to customers of 3 Kings.

11. It was further a part of the conspiracy that Pennington would, using the fictitious identity "David Anderson," send email messages allegedly from David Anderson to himself, to FRENCH and billing personnel within The Wholesale House, all in an effort to perpetuate the conspirators' scheme to defraud.

12. It was further a part of the conspiracy that the conspirators would make false and misleading statements to the owners of The Wholesale House regarding the reason that 3 Kings was receiving deep discounts favoring 3 Kings to the detriment of other long-time customers of The Wholesale House.

### D. Overt Acts

1.   On or about December 4, 2012, Pennington caused an electronic funds transfer from BB&T, 625 SR A1A North, Ponte Vedra Beach, Florida 32082, in the amount of $51,000, to FRENCH, at JP Morgan Chase-Northwood Branch, 6225 Stellhorn Road, Fort Wayne, Indiana 46815, representing a portion of the fraud proceeds from the conspiracy.

2.   On or about March 12, 2013, Pennington caused an electronic funds transfer from BB&T, 625 SR A1A North, Ponte Vedra Beach, Florida 32082, in the amount of $81,500, to FRENCH, at JP Morgan Chase-Northwood Branch, 6225 Stellhorn Road, Fort Wayne, Indiana 46815, representing a portion of the fraud proceeds from the conspiracy.

In violation of Title 18, United States Code, Section 371.

### FORFEITURE

1.   The allegations contained in Count One of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.   Upon conviction of a conspiracy to violate section 1343, in violation of Title 18, United States Code, Section 371, the defendant shall forfeit to the

United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to said violation.

3. The property to be forfeited includes, but is not limited to, the following:

   a. a money judgment in the amount of $3,721,396.40, which represents $4,785,600.93 the defendant obtained in proceeds from the conspiracy, minus $1,064,204.53 which the defendant and co-conspirator Marcelene M. Keesbury jointly paid directly to the victims of the scheme;

   b. a 2013 Bennington Pontoon, Model 25753RCW1O, HIN ETW89850C313, and 2012 Trailmaster boat trailer, VIN 45JE4AX32C1001604, registered in the name of C. Michael French; and

   c. a 2013 Sea Doo (Bombardier) Waverunner, Model GTR 215, HIN YDV26453A313, registered in the name of C. Michael French.

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

                    A. LEE BENTLEY, III
                    United States Attorney

By:   */s/ Mark B. Devereaux*
       MARK B. DEVEREAUX
       Assistant United States Attorney

By:   _____
       MAC D. HEAVENER, III
       Assistant United States Attorney
       Deputy Chief, Jacksonville Division